## LANGLEY v. UNITED STATES.

## LIPSCHUTZ v. SAME.

(Circuit Court of Appeals, Sixth Circuit. November 13, 1925.)

Nos. 4358, 4359.

**1. Criminal law ⟨⇒⟩1159(2)—Weight and probative value of testimony for jury, whose findings in that regard cannot be reviewed by Circuit Court of Appeals.**

In a prosecution for conspiracy to violate National Prohibition Act (Comp. St. Ann. Supp 1923, § 10138¼ et seq.), by unlawfully transporting and selling whisky for beverage purposes, weight and probative value of testimony was for jury to determine, and their findings in that regard could not be reviewed by the Circuit Court of Appeals.

**2. Conspiracy ⟨⇒⟩47—Evidence held to justify conviction of two defendants for conspiracy to violate National Prohibition Act.**

Evidence *held* to justify conviction of two defendants for conspiracy to violate National

Prohibition Act, tit. 2, § 3 (Comp. St. Ann. Supp. 1923, § 10138½aa) by unlawfully transporting and selling whisky for beverage purposes.

**3. Conspiracy ⊜⟹43(12)—Acts of coconspirators, constituting part of means employed to accomplish object of conspiracy, held none of them essential elements of conspiracy.**

Acts of coconspirators alleged in indictment, which constituted merely a part of the means to be employed to accomplish the purpose and object of a conspiracy unlawfully to transport and sell whisky for beverage purposes, in violation of National Prohibition Act, tit. 2, § 3 (Comp. St. Ann. Supp. 1923, § 10138½aa), held none of them essential elements of the conspiracy, and hence proof thereof was not essential to proof of guilt.

**4. Conspiracy ⊜⟹43(12)—Government in prosecution for conspiracy is not required to prove in detail all allegations relating solely to means employed to carry out conspiracy.**

In a prosecution under Penal Code, § 37 (Comp. St. § 10201), the government is required to prove the conspiracy as laid in the indictment, but not to prove in detail all of the allegations in the indictment relating solely to the means to be employed in carrying out the conspiracy.

**5. Conspiracy ⊜⟹43(12)—To warrant conviction against two of several defendants for conspiring unlawfully to transport and sell whisky for beverage purposes, government held not required to establish guilt of any other individual defendant.**

In prosecution against codefendants A. and B. for having conspired with others, including X. and Y., to violate National Prohibition Act, tit. 2, § 3 (Comp. St. Ann. Supp. 1923, § 10138½aa), by unlawfully transporting and selling for beverage purposes whisky to be and in fact withdrawn from a distillery and sold to a fictitious company in another state, under a permit alleged to have been issued or caused to be issued by X. and Y., the government was not required to establish the guilt of X. or Y., or any other individual defendant, to warrant a conviction of A. and B., so that, as respects conviction of A., the question of who issued or caused to be issued the permit was immaterial.

**6. Criminal law ⊜⟹728(3)—Defendant held not entitled to complain of alleged improper statement to jury by United States attorney in opening statement.**

Defendant held not entitled to complain of denial of motions to discharge jury and continue case, because of alleged improper statements to jury by United States attorney in opening statement, where at time alleged improper statements were made, no exception was taken, and motions were not made until later, and there was no indication of lack of good faith on the part of prosecuting attorney, and testimony offered in support of only statement fairly construable as improper was excluded, and jury instructed to consider neither the statement of the district attorney nor offered testimony on that subject in reaching verdict.

**7. Conspiracy ⊜⟹48—Requested instructions held obscure.**

In prosecution under National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), for conspiring unlawfully to transport and sell whisky for beverage purposes, requested instructions that the "government must establish a conspiracy * * * independent and apart from the overt acts, or either of them, charged in the indictment, and independent and apart from any other acts or representations which the government claims were done or made in furtherance of the alleged conspiracy," held properly refused as obscure.

**8. Conspiracy ⊜⟹46—Evidence of overt act is admissible in connection with other evidence in determining existence of conspiracy.**

Evidence of an overt act as well as the manner and circumstance under which it is done is admissible in connection with other evidence in case, to determine whether there was the conspiracy or unlawful agreement charged.

**9. Conspiracy ⊜⟹45—In prosecution for conspiracy to transport and sell whisky for beverage purposes, certain testimony held admissible to show what and how much liquor was subject of conspiracy.**

In a prosecution for conspiracy to violate National Prohibition Act, tit. 2, § 3 (Comp. St. Ann. Supp. 1923, § 10138½aa), by unlawfully transporting and selling 1,400 cases of whisky for beverage purposes, testimony establishing claim of government that, prior to the time covered by the indictment, certain coconspirators purchased 5,000 cases of whisky in a distillery, that the larger portion thereof had been withdrawn, and that the 1,400 cases described in the indictment constituted what was left after such earlier withdrawals, held admissible.

**10. Conspiracy ⊜⟹45—Testimony as to difference in current prices of whisky when sold for lawful or unlawful purposes held admissible.**

Testimony as to difference in current prices of whisky when sold for lawful or unlawful purposes held admissible in prosecution for conspiracy to unlawfully transport and sell whisky for beverage purposes, in violation of National Prohibition Act, tit. 2, § 3 (Comp. St. Ann. Supp. 1923, § 10138½aa).

**11. Criminal law ⊜⟹673(2)—Admission of testimony of coconspirator as to relations with defendant coconspirator prior to time covered in indictment held not error.**

In prosecution for conspiracy to unlawfully transport and sell whisky for beverage purposes, in violation of National Prohibition Act, tit. 2, § 3 (Comp. St. Ann. Supp. 1923, § 10138½aa), admission of testimony of coconspirator as to his relations with defendant prior to the time covered in the indictment held not error, where the trial judge, in admitting the testimony, carefully limited its effect, and instructed jury that it could not be considered for any purpose other than its bearing on the matters alleged in the indictment.

Error to the District Court of the United States, for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

John W. Langley and Milton Lipschutz were each convicted on two counts of indictment charging them and others with a conspiracy to violate the National Prohibition Act, by unlawfully transporting and selling whisky for beverage purposes, and each defendant brings error. Affirmed in each case.

Petition by former for certiorari denied in 46 S. Ct. 204, 70 L. Ed. ——.

Henry E. Davis, of Washington, D. C., for plaintiff in error Langley.

Arthur B. Bensinger, of Louisville, Ky. (William A. Gray, of Philadelphia, Pa., on the brief), for plaintiff in error Lipschutz.

Sawyer A. Smith, U. S. Atty., of Covington, Ky. (John E. Shepard and Rodney G. Bryson, Asst. U. S. Attys., both of Covington, Ky., on the brief), for the United States.

Before DONAHUE and MOORMAN, Circuit Judges, and SESSIONS, District Judge.

SESSIONS, District Judge. Plaintiffs in error (hereinafter called defendants) were convicted upon two counts of an indictment charging them and others with conspiracy to violate the provisions of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.), by unlawfully transporting and selling 1,400 cases of whisky for beverage purposes.

These defendants and nine others were named in the indictment as conspirators. Four of this number, Thomas J. Finn, Gus Scharzkopf, Jacob Eichenberg, and Elias H. Mortimer, were not indicted for the reason that they had previously testified concerning the matters charged in the indictment. One other, James L. Brady, was not indicted, because he was at that time under indictment upon the same charge. The six who were indicted were M. E. Huth, Walter B. Carey, Albert F. Slater, Hiram W. Benner, and defendants Langley and Lipschutz. Of those indicted, Benner was not placed upon trial; Huth and Carey, during the progress of the trial and near the close of the government's case, withdrew their pleas of not guilty and entered pleas of guilty; there was a disagreement of the jury as to Slater; and Langley and Lipschutz were convicted as above stated, and have prosecuted separate writs of error to this court. The two cases have been heard together and upon the same record.

The record in this case is voluminous, but the issues here presented for consideration and determination lie within a narrow compass and a detailed recital of the testimony is unnecessary. The evidence established beyond dispute both the existence of the conspiracy alleged in the indictment and the active participation therein of some of the named conspirators. Indeed, this is conceded by Lipschutz and is not denied by Langley. Each of these defendants, however, emphatically denied any guilty connection with such conspiracy, in either its formation or its execution:

[1, 2] In general outline, the conspiracy and the method and means by and through which it was to be carried out, as shown by the evidence, may be thus stated: Finn, Carey, and Huth were the owners of 1,400 cases of whisky located in the warehouses of the Belle of Anderson Distillery, in Anderson County, Ky. They were desirous of procuring the withdrawal of the whisky from the distillery warehouse in such manner that it might be diverted from legitimate and lawful channels of trade and sold for beverage purposes, in violation of the National Prohibition Act. Under governmental regulations the whisky could be withdrawn from the distillery and sold for nonbeverage purposes, and also shipped and delivered to the purchaser, provided permits were obtained from the prohibition directors of the states in which the purchaser resided and in which the distillery was located, authorizing such sale and specifying the means by which the transportation, shipment, and delivery were to be made. The plan or scheme was to secure such permits regular in form and authorizing the sale of the whisky for nonbeverage purposes and its shipment and delivery to the purchaser by truck, to withdraw the whisky from the distillery upon such permits, and, during its transportation by truck, to divert and sell it for beverage purposes. Mortimer, Scharzkopf, Eichenberg, and the other conspirators, including, as claimed by the government, Lipschutz and Langley, were to obtain the necessary permits and, for their services in so doing, were to receive large sums of money.

While, in some respects, the evidence in the case was in sharp conflict, there was a full measure of direct and positive testimony, which, if believed by the jury, closely connected defendant Langley with the conspiracy, not only in its inception, but during its progress toward realization, and effectively linked defendant Lipschutz with the other conspirators as an active and willful participant in their efforts to carry the conspiracy to a profitable conclusion. The weight and probative value of the testimony was for the

jury to determine, and its findings in that regard cannot be reviewed by this court.

Defendant Langley was a member of Congress from the state of Kentucky, and had been instrumental in procuring the appointment of one Collins as prohibition director for that state. A permit over the signature of the prohibition director for the state of Pennsylvania was obtained. This permit authorized the sale of the 1,400 cases of whisky in the Belle of Anderson Distillery to the Lewis Drug Company of Philadelphia, Pa., a concern which in fact did not exist. Thereafter Langley, in company with Mortimer and some of the other conspirators, went to the state of Kentucky for the purpose of obtaining a permit from Prohibition Director Collins, authorizing the shipment and transportation of the whisky from the distillery to Philadelphia by truck. According to the testimony, Langley had several interviews with Collins in Louisville and Lexington, during which he attemped first to persuade, and finally by threats to coerce, Collins into signing such a permit. Collins steadfastly refused to issue the permit, and later all of the whisky except about 250 cases was withdrawn from the distillery, so far as appears, without a permit, and sold for beverage purposes. Langley received from Mortimer several sums of money, aggregating $11,700. Mortimer testified, in substance, that these sums of money were turned over to Langley, nominally as loans, but in fact as payments for his services in connection with the whisky transaction. At the time of the trial, two and one-half years later, no part of this money had been repaid.

The evidence shows that defendant Lipschutz resided in Philadelphia, Pa., and that, during the period covered by the indictment, he made at least two trips to Louisville and Lexington, the first about the middle of October, and the second about the middle of November. On each of these visits he was registered at the hotels under a fictitious name, and was in constant communication and association with some of the other named conspirators. It also appears that, while he was in Kentucky, considerable quantities of the whisky were withdrawn from the distillery.

There was substantial and positive testimony, which, if believed, warranted the jury in finding that, while he was in Kentucky on the first occasion, he had in his possession a permit for the sale of 1,400 cases of whisky from the Belle of Anderson Distillery, and also that upon his second trip he received from Finn, Huth, or Carey $30,000 which he carried back to Philadelphia and there divided among Mortimer, Scharzkopf, Eichenberg, and himself. While the permit said to have been in the possession of Lipschutz was not fully identified as either the original or a copy of the one issued over the signature of the federal prohibition director for the state of Pennsylvania, it is a reasonable inference that such was the case. No other permit of that character was mentioned by the witnesses, and thereafter no whisky was withdrawn from the distillery, except upon that permit. It is also a fair and reasonable inference that the $30,000 paid by Finn, Huth, and Carey to Lipschutz, and taken by him to Philadelphia and there divided, was for services rendered in connection with the withdrawal and sale of the whisky. There was other substantial evidence, which, coupled with that above referred to, required the submission of the case to the jury, and fully justified the verdict as to both Langley and Lipschutz.

[3] The chief contention of defendants, and the one upon which their several assignments of error are in large part predicated, is, in substance, that the trial judge did not correctly interpret and construe the indictment, and, by reason of such misinterpretation and misconstruction, fell into error in his rulings upon the admission and rejection of evidence, his denial of defendants' motions for a directed verdict, and in his final instructions to the jury. This contention is set forth in the brief of counsel in the following language:

"In its precipitate, therefore, the charge against Langley very clearly is that he was in conspiracy to prevail upon, influence, and coerce Collins to give his consent and approval to truck shipments under a permit which Slater and Benner were to issue authorizing the Lewis Drug Company to purchase and procure from the distillery named 1,400 cases of whisky, to be shipped by truck in accordance with 'T. D. 3212,' meaning Treasury Decision bearing that number, and governing Collins in respect of assenting to and approving truck shipments. On the trial it was throughout contended, and is now confidently contended, that to the conspiracy thus charged Langley was never party and had no relation whatever."

In substance, the same insistence appeared in defendants' motions for a directed verdict in their favor and found more pronounced expression in several of their requests for special instructions to the jury, of which the following is typical:

"Accordingly, even though you may find from the evidence that during the time and times mentioned in the indictment there was

a conspiracy, to which the defendants, or some of them, were parties, having for its object the unlawful withdrawal, transportation, or sale of whisky, unless you find from the evidence beyond a reasonable doubt that the defendants Slater and Benner conspired together, or with the other defendants, or some of them, or some other person or persons, to issue or to cause to be issued the permit described in the indictment, and that the said permit was accordingly issued as alleged in the indictment, you may not find the defendants, or any of them, guilty."

The vice of this contention is apparent, and lies in its confusion of the conspiracy itself with the methods or means employed to effect the object of such conspiracy. In this indictment, after the inducement or introduction, the charge of conspiracy is in the following language: The defendants (naming them) "and others whose names are to the grand jurors aforesaid unknown, each then and there well knowing all the premises aforesaid, did unlawfully, willfully, knowingly, and feloniously conspire, combine, confederate, and agree together to commit an offense against the United States, and particularly to violate section 3, title 2, of the National Prohibition Act; that is, to willfully and unlawfully sell [transport] certain intoxicating liquors, to wit, fourteen hundred cases of whisky for beverage purposes, in violation of said act, at and near the Belle of Anderson Distillery, in Anderson county, Kentucky." Then follows a recital of the methods to be followed, the means to be employed, and the part to be taken and performed by each of the alleged conspirators in accomplishing the purpose and effecting the object of the conspiracy.

The line of demarcation between the conspiracy charged and its object, on the one hand, and the method and means by and through which such object was to be effected, on the other hand, is clearly drawn. The conspiracy and its object were each single and indivisible, while the means to be employed in carrying out the conspiracy and effecting its object were multiple and divisible. The inducing or coercion of Collins by Langley to issue a permit for the transportation of the whisky by truck, the issuance by Slater and Benner of a permit over the name of the federal prohibition director in Pennsylvania for the purchase of the whisky by the Lewis Drug Company, and the payment of money by Huth, Carey, and Finn to their fellow conspirators, Mortimer, Scharzkopf, Eichenberg, and Lipschutz, were none of them an essential element of the conspiracy. Each

was merely a part of the means to be employed to accomplish the purpose and object of the conspiracy, namely, the unlawful sale and transportation of the whisky for beverage purposes.

[4] In a prosecution under section 37 of the Penal Code of the United States (Comp. St. § 10201), the government is required to prove the conspiracy as laid in the indictment, but it is not required to prove in detail all of the allegations in the indictment relating solely to the means to be employed in carrying out the conspiracy. Kepl v. United States (C. C. A. 9) 299 F. 590; Marrin v. United States (C. C. A. 3) 167 F. 951–955, 93 C. C. A. 351; People v. Everest, 51 Hun, 19–26, 3 N. Y. S. 612.

[5] Assuming that, as to Langley, the government was required to prove his agreement to induce or to coerce Collins as prohibition director to issue a permit for the transportation of the whisky by truck, and that, as to Lipschutz, it was required to prove the agreement to pay money to him and the others named, yet, to warrant a conviction of Langley or Lipschutz, or both, the government was not required to establish the guilt of Slater or Benner, or any other individual defendant. So far as defendants Langley and Lipschutz were concerned, the question of who issued or caused to be issued the permit over the signature of the prohibition director for the state of Pennsylvania was wholly immaterial. The instructions to the jury to that effect were correct.

[6] Error is assigned upon the denial of two motions of defendants to discharge the jury and to continue the case over the term, or until a later day, upon the ground of alleged improper statements made by the United States attorney in his opening statement to the jury. Of this it is sufficient to say that no objection was made and no exception taken at the time the alleged improper statements were made. The first of such motions was made on the day following the opening statement to the jury, and the second on the fifth day of the trial and after the close of the government's case. There is no indication of any lack of good faith on the part of the attorney for the government. Furthermore the testimony offered in support of the only statement which could fairly be considered improper was excluded, and the jury was expressly instructed not to consider either the statement of the district attorney or the offered testimony upon that subject in reaching their verdict.

[7] Requested instructions to the jury, the purport of which was that, in order to war-

rant a conviction of any defendant, "the government must establish a conspiracy * * * independent and apart from the overt acts, or any or either of them, charged in said indictment, and independent and apart from any other acts or representations which the government claims were done or made in furtherance of the alleged conspiracy," were refused. The exact meaning of these requested instructions is quite obscure, and it is certain that the granting thereof would have tended to confuse rather than to enlighten the jury.

It is true that, when the sufficiency of an indictment as a pleading is challenged, the description of the overt acts cannot be resorted to in aid or support of the accusatory portion. But the question so presented is one of law for the court and not for the jury. Obviously that is not the situation here.

[8] It is also true that an overt act, as such, must follow the formation of the conspiracy, and must be an act done to effect the object of the conspiracy. The purpose of these requests seems to have been to obtain an instruction that the jury, in determining whether the charge of conspiracy had been established, could not consider the evidence relating to the commission of the overt acts,' or any of them, and could not consider any other acts or representations done or made in furtherance of the alleged conspiracy, even though such acts 'or representations, when proven, might tend directly to show the existence of the conspiracy. The requests were properly refused. An overt act, as well as the manner and circumstances under which it is done, may always be considered in connection with other evidence in the case, in determining whether or not there was the conspiracy or unlawful agreement charged.

[9, 10] The only other assignments of error demanding consideration relate to the rulings of the trial court in the admission of evidence. Over objection of defendants, one witness was permitted to testify to the amounts of whisky removed from the bonded warehouse to the free warehouse of the distillery prior to the time covered by the indictment. It was the claim of the government, supported by the evidence, that Finn, Carey, and Huth, in February, 1921, purchased upon contract approximately 5,000. cases of whisky then in the Belle of Anderson Distillery, that the larger portion of the whisky had been withdrawn from the distillery, and that the 1,400 cases described in the indictment constituted what was left after such earlier withdrawals. It goes without saying that testimony establishing these facts was competent and admissible. The same may be said of the testimony as to the difference in current prices of whisky when sold for lawful or unlawful purposes.

[11] The witness Mortimer was permitted to testify as to his relations with defendant Langley prior to the time covered by the indictment. In admitting this testimony, the trial judge carefully limited its effect, and instructed the jury that it could not be considered for any purpose other than its bearing upon the matters alleged in the indictment.

We have carefully examined the other assignments of error that are not waived, and find them all without merit.

The judgment of the District Court as to each of the defendants, Langley and Lipschutz, is affirmed.