## EGAN v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
November 14, 1927.

No. 7682.

1. **Criminal law** ⊜901—Motion for directed verdict, not renewed after introduction of evidence by defendant, is waived.

Motion for directed verdict, made at close of government's case, but not renewed after introduction of evidence by defendant, is waived, and appellate court will review evidence only to determine whether there was such lack of evidence to support the verdict as to amount to a miscarriage of justice.

2. **Conspiracy** ⊜45—Bonds, other than one specially mentioned in indictment for conspiracy to defraud government by worthless bail bonds, held admissible.

In prosecution for conspiracy to defraud the government by worthless and fraudulent bail or appearance bonds, other worthless and fraudulent bail bonds than the one specially emphasized in indictment were competent.

3. **Criminal law** ⊜762(3)—Comment on conflicting testimony by judge in charge held within proper limits.

Comment by judge in charge on conflicting testimony *held* not error, in view of express statement that the facts were for sole determination by the jury.

In Error to the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Criminal prosecution by the United States against Ed. T. Egan. Judgment of conviction, and defendant brings error. Affirmed.

Errol Joyce, of Tulsa, Okl. (P. H. Moroney, of Tulsa, Okl., on the brief), for plaintiff in error.

John M. Goldesberry, U. S. Atty., of Tulsa, Okl. (W. B. Blair, Asst. U. S. Atty., of Tulsa, Okl., on the brief), for the United States.

Before VAN VALKENBURGH, Circuit Judge, and REEVES and OTIS, District Judges.

VAN VALKENBURGH, Circuit Judge. Plaintiff in error, together with one M. S. Sims, one Walter Baker, and one Hugh Brock, was indicted in the Northern district of Oklahoma for conspiracy to defraud the United States by causing to be executed and

delivered to one Wilson R. Roach, a duly qualified and acting United States commissioner within and for the Northern district of Oklahoma, certain worthless and fraudulent appearance or bail bonds, for the purpose of procuring the release of certain persons who were then and there charged with violation of the laws of the United States, and committed to and in the custody of the United States marshal for said district. Upon application of plaintiff in error, a severance was granted. The trial resulted in conviction, and plaintiff in error was sentenced to pay a fine of $500 and to be confined for a term of 18 months in the federal penitentiary at Leavenworth, Kan. The errors assigned and relied upon are: First, the overruling of defendant's demurrer to testimony and motion for a directed verdict at the close of the government's case; and, second, "the giving of an instruction in the case in which the law applicable to the case was incorrectly stated, and by the giving of which the rights of this defendant were prejudiced."

[1] 1. Upon the overruling of his demurrer and motion at the close of the government's case the defendant proceeded to introduce testimony on his behalf, and at the close of the entire case this demurrer and motion were not renewed. Under the uniform decisions of this court, the challenge to the sufficiency of the evidence was thereby abandoned and waived. This court will review the testimony only for the purpose of determining whether there was such a lack of evidence in support of the charge as to amount to a miscarriage of justice An examination of the record discloses ample evidence to establish the existence of the conspiracy and the active participation of plaintiff in error therein. The verdict of the jury and the resulting judgment are convincingly supported, and this specification of error accordingly must be resolved against plaintiff in error.

[2] In the indictment special emphasis was laid upon a fraudulent bond made in behalf of one J. I. Barnett, charged with a violation of the National Prohibition Act (27 U SCA); but the charge embraced a general conspiracy to cause such fraudulent bonds to be executed, and included the execution of such bonds for divers persons other than Barnett. In the course of the trial the government introduced two other bonds, referred to as the Pat Hurst and R. R. Farrell bonds; these were shown to be worthless and fraudulent, in the procurement and execution of which both plaintiff in error and his codefendant, Brock, participated. This evidence was well within the scope of the indictment charge, and was clearly competent as bearing upon the existence of the conspiracy, and upon the intent of plaintiff in error and his codefendants.

[3] 2. This brings us to a consideration of the propriety of the charge of the court under the second and last assignment of error relied upon in brief and argument. One John L. Ward, a witness for the government, was attorney for Hurst and Farrell, charged with offenses against the United States, for whom these two latter bonds were procured. He testified that he paid to plaintiff in error $150 to procure a bond for Hurst and $100 to procure bond for Farrell. The bonds were made accordingly. Plaintiff in error admits that he received from Ward $150 His testimony upon this point is as follows:

"Q. What did you say Mr. Ward gave you that check for? A. He said he received a retainer from those people, and split the retainer.

"Q. And he was just giving you one-half of what he received on it for your services in assisting in making this bond? A. Yes, sir; going down there.

"Q. It wasn't to make the bond at all? A. Just to go down and meet these parties that was to be there. * * *

"Q. Then he didn't pay you $150 on the Hurst bond? A. No, sir.

"Q. How much did he pay you? A. $50 I think; $150 on the two.

"Q. He paid you $100 on the Farrell bond? A. That was for the two bonds; yes, sir.

"Q. Do I understand you that he paid you that to meet these sureties over here and walk into the office with them? A. No; he said he had been paid a pretty good retainer; unable to be present at the time of the signing of the bond, and paid me that money to go down there and meet the sureties.

"Q. The part I want to know is this: Is all the service you had in connection with the case is to go into the commissioner's office? A. No, sir; I was to assist him later.

"Q. How were you going to assist in defending a man, if you are not licensed to practice law? A. There is a good many things in an office to be done in a lawsuit.

"Q. What is there to be done? A. To see about the witnesses.

"Q. You mean get up the testimony? A. No, sir; to get the witnesses.

"Q. All right; is it a custom of the lawyers here to furnish the witnesses? A. I change my statement about the witnesses; I mean the testimony.

"Q. Is it customary for the lawyers to take the case and furnish the testimony? A. No, sir.

"Q. I just want to find out what he paid you this money for? A. No, sir; that is what it was for."

There was introduced in testimony a check from Ward to Egan. It reads as follows:

"Pay to the order of Ed. T. Egan $100.-00, one hundred dollars. This check is in full settlement of account as shown hereon. Acceptance by indorsement constitutes receipt in full.     John L. Ward,

"By Jno. L. Ward."

Indorsed thereon is the following: "Bond of R. R. Ferrell in Federal Court."

Upon both these bonds the name of C. M. Pierce appears as a surety. The signature in each case is admitted to be a forgery. The other sureties are likewise worthless and irresponsible. It is with respect to these two bonds, and the issue made thereon, that the court made the comment to which exception is taken. That comment was in the following language:

"Any opinion that this court has about the evidence, or the weight and value to be given to the testimony of any witness, is not in any way binding upon this jury. This responsibility belongs to the jury, and any suggestion of an opinion by the court would be only advisory, and should not influence the jury, unless they agree and it harmonizes with their views of this testimony. It is the theory of the government in this case that this defendant was engaged in the business of making fraudulent bonds; that the bond complained of in this case was not the only bond; that he was in a plan or scheme or conspiracy to make such bonds. That is to be determined from this evidence in this case. I will say this to you, gentlemen: There has been a great deal said here about this Pat Hurst and the Farrell bond. This witness Ward says that he employed the defendant in this case to make those bonds, and paid him a cash fee; paid him $150 in one instance, and $100 in the other instance. Now, the defendant takes a different view of it than that. His testimony is conflicting with that of the witness Ward. Of course, it is the duty of the jury, where there is a sharp conflict in the testimony, to harmonize it, if they can; if they cannot, then it is the duty

of the jury to determine where the credibility and the truth lies.

"I want to say to you, gentlemen, that this testimony, that this defendant merely came down to the commissioner's office when these two bonds, the Farrell bond and the Pat Hurst bond, were executed, merely to meet the sureties there and be present when they signed the bonds, and that was the only interest he had in the matter, does not appeal to me very much. It doesn't sound credible to me. Ward says he had paid or did pay him a fee, $150 in one case and $100 in the other case, to make the bonds for him, and he had nothing to do with securing the sureties; he didn't even know who the sureties were. The defendant states he was present when these schedules were filled out on these bonds. The evidence in this case, gentlemen, is, if this witness Pierce is to be believed, that the two schedules on there in the name of Pierce are forgeries. This defendant admits he was present when those schedules were made, but only at the request of Ward. Now, gentlemen, that doesn't strike me of being the conduct that bears the stamp of honest dealing; but that is for you to determine whether that is a reasonable explanation of his conduct. It is for you to determine under all this testimony whether the government has established the guilt of this defendant to the satisfaction of your minds beyond a reasonable doubt. If the evidence satisfies you of his guilt beyond a reasonable doubt, you should not hesitate to return a verdict of guilty; but, if you entertain a reasonable doubt, as instructed heretofore, as to his guilt, after you have fairly and impartially analyzed this testimony, then you should acquit the defendant."

An examination of the charge discloses that the jurors were fully admonished as to their responsibility in the case and were left free to exercise their independent judgment. It is frankly conceded by counsel in brief and argument that there is a very indistinct line of demarcation between argumentation and legitimate comment; that the court is permitted to comment on the evidence, and to express his opinion thereon. We know of no better statement of the rule than that announced by Judge Hook, for this court, in Rudd v. United States, 173 F. 912–914, in which he says:

"We do not mean to impair in any degree the right of a trial court in both civil and criminal cases to comment upon the facts, to express its opinion upon them, and to

sum up the evidence, for that is one of the most valuable features of the practice in the courts of the United States. A judge should not be a mere automatic oracle of the law, but a living participant in the trial, and so far as the limitations of his position permit should see that justice is done. But his comments upon the facts should be judicial and dispassionate, and so carefully guarded that the jurors, who are the triers of them, may be left free to exercise their independent judgment."

This is a rule which in substance has been recognized throughout by the Supreme Court of the United States and other federal courts. Where the spirit of such right of comment has been palpably transgressed, the error has been corrected; but in the main the right of the court to express its opinion upon the facts, even to the extent of declaring its opinion of guilt, has been sustained, provided it is made clear to the jurors that their ultimate right to exercise their independent judgment is in no way abridged. It will be noted that this right of the trial court in the charge embraces several features: (1) It may comment upon the facts. (2) It may express its opinion upon them. (3) It may sum up the evidence. Clearly, then, comment, which in itself, by definition, involves the expression of opinion, explanation, and even criticism, is not confined to a colorless recital, by way of summing up the facts. The true rule is that expression of opinion should not be expanded into what may be termed an argument, as of counsel.

In the instant case the only comment or expression of opinion by the court is embraced in this one statement concerning the conflict in testimony between the witness Ward and the plaintiff in error. If such expression be denied, it is difficult to perceive what remains of the right to comment and to express opinion upon the facts, especially when, in view of the record, such expression of opinion is fully justified. The charge in this case falls well within the rule announced by this court in Weiderman v. United States, 10 F.(2d) 745, and Buchanan v. United States, 15 F.(2d) 496, in each of which comment as strong, or stronger, than that of the court in the instant case was held to be permissible. Judge Kenyon, who wrote the opinion of this court in Cook v. United States, 18 F.(2d) 50, also concurred in the opinions in Weiderman v. United States and Buchanan v. United States, supra. After citing these cases with others, including Rudd v. United States, supra, he deduces the following excellent rule for application to individual cases as they arise:

"We think the line of demarcation between what a court may say to the jury in a criminal case, in expressing his opinion on the facts, and what he may not say, is to be drawn between mere expression of opinion, not partaking of such argumentative nature as to amount to advocacy, leaving to the jury absolute freedom to determine the facts, and such discussion as amounts to an argument, and makes the court in fact an advocate against the defendant. A trial judge is not merely a moderator or umpire; neither is he an advocate."

Adopting the language of the opinion in Weiderman v. United States, "we do not think that the court transcended that rule in this case."

Finding no reversible error assigned, it is ordered that the judgment below be, and it is, affirmed.