## EDDINGTON v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
January 25, 1928.

No. 7609.

1. Conspiracy ⬤≈33(1)—"Conspiracy to defraud government" consists of unlawful scheme on which minds of conspirators have met, together with any act to effect object (18 USCA § 88).

Under 18 USCA § 88, providing that, if two or more persons conspire to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the "conspiracy," the offense consists of unlawful scheme upon which minds of the conspirators have met, together with act to effect the object of the conspiracy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conspiracy.]

2. Conspiracy ⬤≈47—Evidence, though circumstantial, held to sustain conviction of conspiracy to defraud government (18 USCA § 88).

In prosecution for conspiracy to defraud the government, under 18 USCA § 88, evidence, though circumstantial, held sufficient to sustain conviction.

3. Criminal law ⬤≈427(3)—Admission of evidence of overt act before requiring prima facie proof of conspiracy held not error (18 USCA § 88).

Admission of evidence of overt act without first requiring government to show prima facie evidence of conspiracy under 18 USCA § 88, held not error, since evidence of overt act as well as manner and circumstances under which it is done is admissible in connection with other evidence in case to determine whether or not there was the conspiracy or unlawful agreement charged.

4. Criminal law ⬤≈402(2)—Admission of recorded copies of instruments of conveyance without requiring proof originals were not available held not error; government not having control of originals and being unable to compel production (Comp. St. Okl. 1921, § 654).

In prosecution for conspiring to defraud the government under 18 USCA § 88, admission in evidence of recorded copies of certain instruments of conveyance, the originals not being in possession or under control of government, held not error under Comp. St. Okl. 1921, § 654, giving recorded copies effect of originals, since government was not in position to compel defendant to produce original documents, and notice to produce was unnecessary, since defendant could not be compelled to produce any document constituting link in chain of evidence against him.

5. Criminal law ⬤≈762(2)—Charge expressing opinion on evidence but instructing jury that it was not binding on them held not erroneous.

Comments of court in charge to jury, expressing his opinion as to credibility of certain evidence but instructing jury it is not binding on them, held not erroneous.

6. Criminal law ⬤≈762(2)—Judge may express opinion on facts after making it clear to jury that it is not binding on them.

Judge may express opinion as to facts after making it clear to jury that it was nothing but his opinion and not binding on them.

In Error to the District Court of the United States for the Northern District of Oklahoma, Franklin E. Kennamer, Judge.

W. M. Eddington was convicted of conspiring to defraud the government, and he brings error. Affirmed.

See, also, 21 F.(2d) 1011.

John T. Harley, of Tulsa, Okl. (Wash E. Hudson, of Tulsa, Okl., on the brief), for plaintiff in error.

John M. Goldesberry, U. S. Atty., of Tulsa, Okl.

Before STONE, Circuit Judge, and REEVES and OTIS, District Judges.

REEVES, District Judge. Indicted for conspiracy to defraud the government, plaintiff in error, with others, was convicted.

The indictment charged that the plaintiff in error, with Walter Chitwood, R. D. Emerson, Chester Truelove, Harry White, and Harry Sherrill, on or about the 13th day of August, A. D. 1925, "with the intent to defraud the United States of America," confederated and agreed to execute or cause to be executed and to deliver to a United States commissioner within the Northern district of Oklahoma "certain worthless and fraudulent appearance or bail bonds, for the purpose of procuring the release of certain persons who were then and there charged with the violation of the laws of the United States of America," and "that, while said conspiracy * * * was in full force and effect * * * and in pursuance thereof," committed certain overt acts set out in the indictment.

One of the overt acts charged was the execution and delivery of a bond by the defendant Sherrill, who was being held to answer a pending charge. The defendants Truelove and Emerson were his sureties, and scheduled properties which they did not own.

The evidence, on the part of the government, tended to show that the property listed in the schedules by Truelove had been acquired by plaintiff in error on the 7th day of August, 1925, by deed which was left blank as to the grantee. This was six days before the execution of the Sherrill bond. Plaintiff in error caused the name of Truelove to be inserted in the deed for his convenience. A few days thereafter he disposed of said property by deed signed by Truelove. The property listed by the defendant Emerson did not stand in his name. Plaintiff in error held a purported deed of conveyance, dated July 30, 1925.

Plaintiff in error denied the conspiracy. He explained that deeds to property acquired by him were left blank as to the grantee because his wife was in the state of Missouri, and that by so doing he would not have to send the deeds there for her signature. He said he had traded the property to Truelove, but shortly afterwards obtained it again for the purpose of consummating a deal with another party.

Plaintiff in error did not deny categorically that he had told one of the witnesses for the government that he had had said property put in Truelove's name for convenience. He simply said he did not remember. He testified, in substance, that he met Truelove by chance, and a trade was made, and then quite as casually met another party who was in the market for the same property. Thereupon he got it back from Truelove to make another deal. In the meantime Truelove scheduled the property without his knowledge. Plaintiff in error said he did know Emerson, but that he held a deed to the property scheduled by Emerson.

In proving title to the property, covered by the schedules of Emerson and Truelove, the government used the deed records of the counties where such properties were situated. The evidence of overt acts was proffered by the government in connection with other evidence in the case.

In the charge of the court, the following comment appears:

"It is the theory of the government in this case that these defendants Chitwood, Truelove, Emerson, Eddington, and White, entered into a conspiracy to obtain the release of this man Harry Sherrill, who was in custody of the United States marshal, charged with certain offenses against the Harrison Narcotic Law; that this particular bail bond involved in this case was a spurious, as we might term it, or worthless, bond."

After detailing the circumstances under which the property acquired by plaintiff in error was transferred to Truelove and then back to plaintiff in error, the court said:

"As I said to you, gentlemen, my opinion about the evidence is not in any way binding on you, but I do not give any credence to this testimony about this trade. It doesn't appeal to me as a reasonable transaction, or as a bona fide transaction at all. It doesn't appeal to me that men do business that way; that is, honest business.

"Now, this man Holbert who traded for this Sperry property from Mr. Eddington, he said he made the trade with him, and Mr. Eddington told him at the time he made the trade that he had had the Sperry property put in Truelove's name as a matter of convenience and form. I think that is true, the convenience of getting this man Truelove to sign this spurious, worthless bond. * * * Now, gentlemen, I don't know, that may strike you entirely different; that Truelove deal may sound all right. It may be; we cannot sometimes read the motives that actuate men, but it doesn't appeal to me at all as being a bona fide transaction."

Plaintiff in error complains in this court (a) that the trial court erred in overruling a demurrer to the evidence tendered at the close of the government's case and again at the close of all the evidence; (b) that the trial court erred in admitting testimony of overt acts of certain of the defendants without first requiring the government to show prima facie evidence of a conspiracy; (c) that it

was error for the trial court to admit in evidence the recorded copies of certain instruments of conveyance without first requiring proof that the original instruments were not available; and (d) that the trial court made argumentative comment upon the evidence in the charge to the jury. .

Other pertinent facts will be noted and discussed in the course of the opinion.

[1] 1. This prosecution is for a conspiracy "to defraud the United States." The statute provides that, "if two or more persons conspire * * * to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy," etc. (18 USCA § 88). The offense, under this statute, consists of the unlawful scheme upon which the minds of the conspirators have met, together with any act to effect the object of the conspiracy. Houston v. United States (C. C. A.) 217 F. 852, certiorari denied 238 U. S. 613, 35 S. Ct. 284, 59 L. Ed. 1490.

The evidence shows that the bonds mentioned in the indictment were worthless, but that upon their apparent genuineness the principal was discharged from custody.

[2] The defendants named in the indictment were either office associates, or had offices in close proximity to each other, or had business dealings and contact. Chitwood and White were office associates. Truelove had business with defendant White on the said 13th of August. When he went to White's office, his name was suggested to Chitwood as a possible bondsman on the Sherrill bond. About the same time, Emerson came to see Chitwood on personal business, and his suretyship on the Sherrill bond was also proposed to him by Chitwood. Plaintiff in error had an office near by, and by a strange coincidence Truelove and Emerson were able to qualify as bondsmen by scheduling properties but recently acquired by him. Truelove had an evanescent and fleeting title, but Emerson had none. Other facts and circumstances not necessary to detail pointed to a prearranged plan to secure the release of Sherrill upon a worthless bond. This evidence was sufficient to sustain a conviction. Conspiracies to defraud are usually shown by circumstantial evidence. Morris v. United States (C. C. A.) 7 F.(2d) 785; Kriebel v. United States (C. C. A.) 8 F.(2d) 692.

[3] 2. The court did not err in admitting evidence of overt acts without first requiring the government to show prima facie evidence of the conspiracy. While it is true that an overt act as such must follow the formation of the conspiracy, yet "an overt act, as well as the manner and circumstances under which it is done, may always be considered in connection with other evidence in the case, in determining whether or not there was the conspiracy or unlawful agreement charged." Langley v. United States (C. C. A.) 8 F.(2d) 815, loc. cit. 820.

[4] 3. Neither did the trial court commit error in admitting in evidence the recorded copies of certain instruments of conveyance without first requiring proof that the original instruments were not available. Section 654, Compiled Statutes of Oklahoma 1921 provides as follows:

"The books and records required by law to be kept by any county judge, county clerk, county treasurer, register of deeds, clerk of the district court, justice of the peace, police judge or other public officers, may be received in evidence in any court; and when any such record is of a paper, document, or instrument authorized to be recorded, *and the original thereof is not in the possession or under the control of the party desiring to use the same, such record shall have the same effect as the original;* but no public officer herein named or other custodian of public records, shall be compelled to attend any court, officer or tribunal sitting more than one mile from his office with any record or records belonging to his office or in his custody as such officer."

The original of the records were not in the possession or under the control of the government. This is not controverted. Moreover, the government was not in a position to compel the defendants to produce the original documents in court. "The notice to produce was entirely unnecessary, because defendant could not be compelled to produce any document constituting a link in the chain of evidence against him." Hanish v. United States (C. C. A.) 227 F. 584.

[5, 6] 4. The comments of the court, in the charge to the jury, did not constitute error. The court had a right to comment upon the evidence and to call the attention of the jury to any part of it. Moreover, it was within the right of the court to express his opinion upon the facts. No rule of law was incorrectly stated, and all matters of fact were ultimately submitted to the determination of the jury. The court told the jury that any "opinion as to what I think about the credibility of some witnesses' testimony I want to advise you now that it is in no way binding upon you, and you should not consider it unless it harmonizes with your views of the testimony. As I have told you, you are the gentlemen that bear the responsibility of ascertaining what the facts are and you have no-

body to satisfy except your own enlightened conscience except your own enlightened conscience under your oath as jurors;" and, "as I said to you, gentlemen, my opinion about the evidence is not in any way binding upon you." See Buchanan v. United States (C. C. A.) 15 F.(2d) 496; Wiedeman v. United States (C. C. A.) 10 F.(2d) 745; Egan v. United States, No. 7682, 22 F.(2d) 776, recently cited by this court.

The record is free from prejudicial error. The plaintiff in error had a fair trial, and the judgment should be affirmed. It is so ordered.