### HANFELT v. UNITED STATES.

### SAFARIK v. SAME.

Nos. 9140, 9144.

Circuit Court of Appeals, Eighth Circuit.

Nov. 18, 1931.

Eugene D. O'Sullivan, of Omaha, Neb. (Charles J. Southard and J. R. Lones, both of Omaha, Neb., on the brief), for appellant Clarence Hanfelt.

Herman Aye, of Omaha, Neb. (Jesse D. Cranny and John P. Moore, Jr., both of Omaha, Neb., on the brief), for appellant Charles V. Safarik.

Edson Smith, Asst. U. S. Atty., of Omaha, Neb. (Charles E. Sandall, U. S. Atty., and Ambrose C. Epperson, Asst. U. S. Atty., both of Omaha, Neb., Robert Van Pelt, Asst. U. S. Atty., of Lincoln, Neb., and Lawrence I. Shaw, Asst. U. S. Atty., of Omaha, Neb. on the brief), for the United States.

Before KENYON and GARDNER, Circuit Judges, and REEVES, District Judge.

GARDNER, Circuit Judge.

Appellants were jointly indicted in an indictment containing four counts, the first charging conspiracy to possess, transport, and sell intoxicating liquor, the second charging transportation of 150 gallons of alcohol, the third charging possession of 150 gallons of alcohol in an automobile, and the fourth charging possession of 114 gallons of alcohol in a chicken coop. On trial they were convicted on the first, third, and fourth counts, and by direction of the court were found not guilty on count 2. The offenses are all charged to have been committed on November 29, 1929, on the premises at 1107 Fort Crook boulevard, in Sarpy county, Neb. While separate appeals have been taken, and separate briefs filed by the defendants, there is but one record, and the grounds on which reversal is sought are substantially the same in each case. It is urged: (1) That the court erred in overruling defendants' motion to suppress certain evidence as having been secured by an unlawful search and seizure; (2) that the evidence on the conspiracy and possession counts was insufficient; (3) that there was error in receiving, over their objection, certain hearsay testimony; and (4) that there was error in the court's instructions on the conspiracy count.

In the course of the trial, one Ralph W. Jones, a deputy sheriff of Douglas county, Neb., was produced as a witness on behalf of the government, and in the course of his examination in chief the following occurred:

"Q. What took place at that time (November 29, 1929, at 1107 Fort Crook Boulevard, Sarpy County, Nebraska)? A. Well, we all drove into the yard at 1107 Fort Crook Boulevard and Agent Thompson and Agent Zersen went to the Chicken Coop which is attached to the south end of this garage and made an examination of those cans that they had seen the night before. They informed Agent Forsling and I that the cans contained alcohol.

"Mr. Lones: That is objected to as hearsay and move to strike it out for that reason.

"The Court: Overruled, it may stand. (Defendants and each of them except.)

"A. (continued) Agent Forsling and I then went to the back door of this house at 1107 Fort Crook Boulevard and the lady that lived there opened the door. We told her who we were—

"Q. (Interrupting) Just relate the conversation you had with the lady in the house.

"Mr. Lones: Objected to as calling for hearsay testimony, not in the presence of the defendants or either of them, and not binding on the defendants or either of them, and incompetent for that reason. (Objection overruled. Defendants and each of them except.)

"A. I asked her who the premises belonged to and she said it belonged to her; that the property was theirs. I told her we had found this alcohol in this chicken coop and asked her if it was hers and she said it was not. I asked her who it belonged to and she said it belonged to a man who had rented the chicken coop from her, and who was paying her twenty-five dollars a month. I asked her who that man was but she at that time did not want to tell me who it was. I said, 'well, it is just the matter of you owning the property, and if you don't tell us who the alcohol belongs to we will have to arrest you.' She said she was sorry that she had rented it for the purpose, that she didn't want her husband to know about it, that it was extra money. I said, 'well, I am sure your husband will know about it, because the government taxes the amount of alcohol or intoxicating liquor found on the place,' and that it probably would be taxed against her property in the end and her husband would know about it. Then she told me that the alcohol belonged to a man by the name

of Safarik. Then between Forsling and I we arranged with her to call Safarik and inform him that there had been somebody around the property and that she was afraid the alcohol would be taken out of there and for him to come and get it, and that is the last conversation I had with the lady."

This evidence was palpably hearsay. The defendants were charged in the first count with a conspiracy to possess, transport, and sell the intoxicating liquor referred to in this quoted testimony, and they were found guilty on that count. Counsel for the government, referring to this testimony, say: "It must be conceded that this was hearsay. The only reason that the question calling for the conversation with the woman was asked, was that counsel for defendants, in his opening statement to the jury, went into that conversation in detail, relating to the jury all that was said in the conversation and much that was not said."

This voluntary statement of counsel finds no support in the record, but, if it be accepted as a verity, it would not make this testimony admissible on behalf of the government. The defendants, under the Constitution, were entitled to be confronted with the witnesses against them (Amendment 6, Constitution). The rule excluding hearsay is the broadest of all rules of evidence. Such evidence is not subject to the ordinary tests required by law for ascertaining the truth. The witness cannot be cross-examined in the presence of the court and jury, and, such testimony not being given under the sanction of an oath, the witness could not be prosecuted for perjury, if his evidence were false. Neither is he subject to observation by the jury, as he would be if produced as a witness before them.

In Hopt v. People of Utah, 110 U. S. 574, 4 S. Ct. 202, 205, 28 L. Ed. 262, in an opinion by Mr. Justice Harlan, it is said: "No proper foundation was laid for the question propounded to the surgeon as to who pointed out and identified to him the body he examined as that of John F. Turner. He had previously stated that he did not personally know the deceased, and did not recognize the body to be his; he did not know that it was the body which the father of deceased desired him to examine; consequently his answer could only place before the jury the statement of some one not under oath, and who, being absent, could not be subjected to the ordeal of a cross-examination. The question plainly called for hearsay evidence, which, in its legal sense, 'de-

notes that kind of evidence which does not derive its value solely from the credit to be given to the witness himself, but rests, also, in part, on the veracity and competency of some other person.' 1 Greenl. Ev. § 99; 1 Phil. Ev. 169. The general rule, subject to certain well-established exceptions as old as the rule itself,—applicable in civil cases, and therefore to be rigidly enforced where life or liberty are at stake,—was stated in Queen v. Hepburn, 7 Cranch, 295 [3 L. Ed. 348], to be, 'that hearsay evidence is incompetent to establish any specific fact, which fact is in its nature susceptible of being proved by witnesses who speak from their own knowledge.' 'That this species of testimony,' the court further said, speaking by Chief Justice Marshall, 'supposed some better testimony which might be adduced in the particular case is not the sole ground of its exclusion. Its intrinsic weakness, its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover, combine to support the rule that hearsay evidence is inadmissible.' "

The evidence so erroneously admitted tended to prove very material and essential allegations in the indictment, and we cannot say that its admission was without prejudice to the defendants. As the case must be reversed for this error, and the record may not be the same on the retrial, we refrain from discussing the other assignments urged.

The judgments are therefore reversed and the cause remanded, with directions to grant the defendants a new trial.