## SAFARIK v. UNITED STATES. *

### HANFELT v. SAME.
Nos. 9505, 9506.

Circuit Court of Appeals, Eighth Circuit.
Jan. 11, 1933.

*For opinion denying rehearing, see 63 F.(2d) 369.

Eugene D. O'Sullivan, of Omaha, Neb. (Charles J. Southard and J. R. Lones, both of Omaha, Neb., on the brief), for appellants.

Edson Smith, Asst. U. S. Atty., of Omaha, Neb. (Charles E. Sandall, U. S. Atty., and Ambrose C. Epperson, Asst. U. S. Atty., both of Omaha, Neb., Robert Van Pelt, Asst. U. S. Atty., of Lincoln, Neb., and Lawrence I. Shaw, Asst. U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

GARDNER, Circuit Judge.

Appellants were jointly indicted in an indictment which contains four counts. The first count charged a conspiracy to possess, to transport, and to sell intoxicating liquor in violation of the National Prohibition Act; the second charged transportation of 150 gallons of alcohol; the third charged possession of 150 gallons of alcohol in an automobile; and the fourth charged possession of 114 gallons of alcohol in a chicken coop. All the offenses were charged as having been committed by the defendants on November 29, 1929, on the premises at 1107 Fort Crook boulevard, Sarpy county, Neb. They were convicted on the first, third, and fourth counts, and acquitted by direction of the court on the second count. From the judgment and sentence entered on the verdict, defendants prosecute this appeal, alleging error substantially as follows:

(1) That the court erred in overruling their motion to suppress evidence alleged to have been secured by reason of an unlawful search and seizure.

(2) That the evidence on count 1, the conspiracy count, was insufficient, and that the instruction of the court regarding the conspiracy count was erroneous.

(3) That the evidence on counts 3 and 4, charging, respectively, the possession of 150 gallons of alcohol in an automobile, and 114 gallons of alcohol in a chicken coop, was insufficient.

(4) That the court erred in receiving testimony that at the time of his arrest a pistol was found in the pocket of the defendant Safarik.

(5) That the court erred in receiving in evidence on the trial of the cause their motion to suppress the evidence.

(6) That the court erred in refusing to admit in evidence their Exhibits 6, 7, and 8, and in striking out testimony proffered by them relative thereto.

On a former appeal we reversed the judgment of the lower court and ordered a new trial because of the error of the court in admitting certain hearsay testimony. Hanfelt v. United States (C. C. A.) 53 F.(2d) 811.

Defendants submitted a motion to suppress certain evidence which they anticipated would be offered against them, and supported that motion by the following evidence:

On November 28, 1929, Ralph W. Jones, a federal prohibition agent, received an anonymous telephone call advising him that in the back end of the garage behind the house at 1107 Fort Crook boulevard there was stored a supply of alcohol belonging to the defendant Safarik, and that the informant had personally seen the alcohol there. Prior to that time this agent had received other anonymous telephone calls and letters purporting to give information as to violations of the Prohibition Act, and had generally found information of that character reliable. The agent knew defendant Safarik, and knew that he had been convicted for violation of the liquor laws. This information Jones imparted to all the other agents who participated in the challenged search and seizure in this case.

In the evening of November 28, 1929, Prohibition Agents Jones, Thompson, and Zersen drove to the vicinity of 1107 Fort Crook boulevard and, with the aid of a flash-light, two of these agents looked through the window on the west side of the chicken coop, and observed therein a pile of rectangular, bright-colored tin, gallon cans without labels; that these cans were those regularly used in the vicinity of Omaha in the bootleg alcohol trade. The agents estimated that there were about 300 of these cans, which were piled against the south partition and east wall of the chicken coop. There is a dwelling house at 1107 Fort Crook boulevard, and another dwelling house to the west.

In the forenoon of November 29, 1929, these prohibition agents returned to 1107 Fort Crook boulevard, and two of them went into the chicken coop, examined a can of alcohol, seized four of the cans, and took them into the agents' car. Two of the agents went into the house and talked with a woman residing there. Then leaving the premises, these agents returned to the neighborhood about 1 o'clock in the afternoon of that day, three of the officers remaining in an automobile which they parked across the boulevard, northeast of 1107. One of them was admitted to the dwelling house to the east of 1107, and kept a lookout from an upstairs window. Between 2 and 3 o'clock in the afternoon, this agent saw a car drive into the yard at 1107, and a man got out, whom he recognized as the defendant Safarik. He had known Safarik for about two years, knew he had been convicted for violations of the National Prohibition Act, and had received information that Safarik handled alcohol and whisky in large quantities. The agent observed Safarik get out of the car and go into the chicken coop, then go to the house and return to the chicken coop with another man who lived in the house, and then drive away. This agent reported to his associates what he had observed, and was then joined by one of the other agents, and they returned to watch from a second-story window of the house east of 1107.

A little after 7 o'clock in the evening, these two agents on watch saw a large car drive into the yard, observed two men get out of it and go down to the chicken coop. It was dark at that time, but there was snow on the ground and the lights were shining from the windows of the house west of 1107. This car parked about fifteen or twenty feet northeast of the garage, and about thirty-five feet from the chicken coop. The two men who went to the chicken coop were then observed carrying packages from the chicken coop and loading them into the car. The agents who were watching from a window of the house on the adjoining property then went outdoors and watched the men load the car with these cans. One agent recognized Safarik. When the light reflected on the packages that were being carried, the agents knew that they were the size of five one-gallon tin cans tied together, and Agent Forsling, who had had eight years' experience as a federal prohibition agent and had become familiar with containers of alcohol, knew that most bootleg alcohol in the vicinity of Omaha was contained in such cans, and he was able to identify these containers as alcohol cans, entirely disregarding anything he had seen in the chicken coop prior to his watching there that night. The agents could tell that the cans were full by the deadened noise they made when the men carrying them set them down in the car. When the watching officers thought the men had the car about loaded, one of them gave a flash-light signal to the other agents stationed in the automobile across the street, who then drove their car into the yard. Defendant Safarik ran south and was pursued and arrested. Hanfelt was arrested while at the car.

After arresting the two defendants, the agents seized the 150 gallons of alcohol in the car, and then entered the chicken coop and seized the 110 gallons of alcohol there.

The defendants had a lease on the garage and chicken coop, and had an easement which entitled them to ingress and egress over the driveway connecting the garage and the chicken coop with the street. They had no lease on the lot, nor did they have an exclusive right to the use of the driveway.

The court suppressed as evidence the four cans taken from the chicken coop on the first

search, but overruled the motion as to the cans seized at the time of the arrest; and on the trial no evidence was received with reference to the four cans seized before the arrest, nor was any evidence admitted as to the first entry and seizure. We need not, therefore, consider the facts and circumstances connected with the first search and seizure, but direct our inquiry to the refusal of the court to suppress as evidence the property seized at the time of the defendants' arrest.

When the agents passed onto these premises, they did not thereby trespass upon nor invade any property belonging to or in the possession of defendants. They leased only the garage and chicken coop. Immunity from unreasonable search and seizure is a personal right, and it was no concern of defendants that the government agents were trespassing upon the property of some other person. Graham v. United States (C. C. A.) 15 F.(2d) 740; Coon v. United States (C. C. A.) 36 F.(2d) 164; Simmons v. United States (C. C. A.) 18 F.(2d) 85; United States v. Gass (D. C.) 14 F.(2d) 229; United States v. Gass (D. C.) 17 F.(2d) 996; United States v. Mandel (D. C.) 17 F.(2d) 270; McShann v. United States (C. C. A.) 38 F.(2d) 635; McMillan v. United States (C. C. A.) 26 F.(2d) 58; Rosenberg v. United States (C. C. A.) 15 F.(2d) 179. They neither owned, leased, controlled, occupied, possessed, nor had any interest in the lot upon which these agents entered except only the garage, chicken coop, and the right of ingress and egress over the driveway.

If we assume that the first seizure, as held by the lower court, was unreasonable, it does not necessarily follow that what was done in the matter of that search and seizure rendered the balance of the intoxicating liquor forever immune from search and seizure. McGuire v. United States, 273 U. S. 95, 47 S. Ct. 259, 71 L. Ed. 556; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319, 24 A. L. R. 1426; United States v. Lee, 274 U. S. 559, 47 S. Ct. 746, 71 L. Ed. 1202.

While no evidence obtained as the result of the first search and seizure was admitted, it is urged that, but for the evidence so obtained, the subsequent arrest of the defendants and seizure of the alcohol which they had in the automobile would not have occurred, or would at least have been without probable cause, and hence unlawful, citing Silverthorne Lumber Co. v. United States, 251 U. S. 385,

40 S. Ct. 182, 64 L. Ed. 319, 24 A. L. R. 1426, and Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 266, 65 L. Ed. 647. The teaching of these decisions is to the effect that knowledge gained by the wrongful acts of federal officers in seizing papers in violation of the owner's constitutional protection against unlawful searches and seizures, cannot be used by the government in a criminal prosecution against the owner of the property. In the instant case, however, it is fairly established that, quite aside from this information gained by the officers on the first search and seizure, they had sufficient information to warrant the arrest of the defendants when they were finally arrested. Before the first seizure was made, the federal officers, by means of the use of a flash-light, saw through the windows of the chicken coop these cans, which they recognized as those habitually used in the bootleg alcohol traffic. Up to that time the officers had committed no trespass upon any property of the defendants, and the use of the flash-light was not an unreasonable search prohibited by the constitutional guaranty. United States v. Lee, 274 U. S. 559, 47 S. Ct. 746, 71 L. Ed. 1202; Smith v. United States (C. C. A.) 2 F.(2d) 715; Rowland v. Commonwealth, 202 Ky. 92, 259 S. W. 33; Smith v. State, 155 Tenn. 40, 290 S. W. 4. They were therefore entitled to make use of the information so obtained. In addition to this, they observed the defendants taking the cans of alcohol from the chicken coop and placing them in an automobile. This was being done at night. The officers knew from the deadened sound of the cans when they were placed in the car that they were full. They knew that the defendant Safarik was engaged in the illicit liquor traffic and had been twice previously convicted for violations of the liquor laws. When they approached these men while thus engaged in loading the liquor into the car, defendant Safarik fled. There was therefore evidence before the very eyes of these officers, taken in connection with what they already knew, and, without reference to the seizure which they had previously made, sufficient to warrant them as reasonably prudent men in believing that a crime was being committed in their presence. They were therefore warranted in arresting the defendants without a warrant. Husty v. United States, 282 U. S. 694, 51 S. Ct. 240, 75 L. Ed. 629, 74 A. L. R. 1407; Dumbra v. United States, 268 U. S. 435, 45 S. Ct. 546, 69 L. Ed. 1032; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790.

896

■ As an incident to this arrest, the officers had a right to seize these cans of alcohol in the car. They had seen defendants taking them from the chicken coop where the officers had previously seen them. The seizure of the alcohol in the car, the search of the chicken coop, and seizure of the alcohol therein subsequent to and as an incident to the arrest of the defendants, was not unreasonable. An officer who arrests for a felony committed in his presence may search not merely the person arrested, but also the place where he is discovered and other places in the immediate vicinity which are clearly indicated as having formed a part of the scene of the crime. Stark v. United States (C. C. A.) 44 F.(2d) 946; Vecchio v. United States (C. C. A.) 53 F.(2d) 628; Temperani v. United States (C. C. A.) 299 F. 365; Felio v. United States (C. C. A.) 55 F.(2d) 161; Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Marron v. United States, 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231; Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Patton v. State, 43 Okl. 436, 279 P. 694.

The arrest being lawful, the contemporaneous search was proper as an incident thereto. There was therefore no error in denying defendants' motion to suppress the evidence obtained at the time of the arrest.

■ The sufficiency of the evidence to sustain the charge of conspiracy is challenged. The essence of a criminal conspiracy is an unlawful agreement to violate a criminal statute. Proof of the overt acts is necessary, not as constituting an essential part of the conspiracy, but to establish the continued existence of the agreement to violate the law. It does not necessarily follow that there must be direct evidence of the existence of the conspiracy wholly disconnected with the evidence of the commission of the overt acts. A conspiracy is rarely proven by direct evidence, but must be established ordinarily by circumstances. If this proof was sufficient to establish an unlawful agreement, either express or implied, and the participation therein by the defendants with knowledge of the agreement, then it was proper to deny defendants' motion for a directed verdict on the conspiracy count. The overt acts may properly be considered with other evidence in determining whether a conspiracy exists; and, where the overt acts are of the character which are usu-

ally, if not necessarily, done pursuant to a previous scheme and plan, proof of the acts has a tendency to show a pre-existing conspiracy, so that when proven they may be considered as evidence of the conspiracy charged. Babb v. United States (C. C. A.) 27 F.(2d) 80; Balderson v. United States (C. C. A.) 24 F.(2d) 915; Weeke v. United States (C. C. A.) 14 F.(2d) 398; Billingsley v. United States (C. C. A.) 16 F.(2d) 754; Bartkus v. United States (C. C. A.) 21 F.(2d) 425; Eddington v. United States (C. C. A.) 24 F.(2d) 50; Parilla v. United States (C. C. A.) 280 F. 761; Langley v. United States (C. C. A.) 8 F.(2d) 815; Stack v. United States (C. C. A.) 27 F.(2d) 16.

■ To restate the evidence would unduly extend this opinion. These defendants together drove in an automobile to the premises described in the indictment and there personally loaded alcohol into the automobile, preparatory to its transportation. There was evidence that they had jointly leased the garage and chicken coop and were in possession of it, and they personally carried the cans of liquor from the chicken coop and placed them in the automobile. This evidence in connection with the other facts and circumstances was sufficient to warrant the jury in finding that the defendants had agreed together to possess and to transport the alcohol. But it is urged that the court erred in its instructions in submitting the conspiracy count to the jury. The indictment charged that the defendants "did unlawfully, wilfully, knowingly, and feloniously combine, confederate, conspire, and agree together to possess, to transport, and to sell certain intoxicating liquor." In submitting this count to the jury, the court instructed that the indictment charged that the defendants "did conspire together to violate the laws of the United States and to unlawfully possess, transport and sell intoxicating liquor. There was no proof offered by the Government of a conspiracy to sell intoxicating liquor. This testimony concerns the alleged unlawful possession and transporting of intoxicating liquor."

Again the court instructed that, "It is not necessary for the Government to prove that the conspiracy contemplated the commission of all the crimes set out, that is to say, it is set out that they conspired to possess, transport and sell. It is not necessary for the Government to prove that the conspiracy included the purpose to sell intoxicating liq-

uors—there is no proof of that. It is sufficient if the proof shows conspiracy to possess or to transport as alleged in the indictment."

It was not necessary to sustain count 1 that the government prove all the charged purposes of the conspiracy. If the evidence was sufficient to show a conspiracy to possess and to transport, certainly it was not prejudicial to the defendants that the evidence was not sufficient to prove also that the purpose of the conspiracy was to sell. The court in effect instructed the jury that they could not find defendants guilty of conspiracy to sell, but that they must find them not guilty unless they found them guilty of a conspiracy to transport or to possess. Kepl v. United States (C. C. A.) 299 F. 590; Ford v. United States (C. C. A.) 10 F.(2d) 339; Anstess v. United States (C. C. A.) 22 F.(2d) 594.

There can be no doubt of the sufficiency of the evidence to sustain the verdict of guilty on counts 3 and 4, the possession counts. This evidence has already been referred to, and it was not only uncontradicted but conclusive.

The government, over the objection of defendants, was permitted to introduce in evidence the motion which they had interposed to suppress the evidence obtained by both the first and second seizures, together with the supporting affidavits submitted in support of the motion. This we think is the most serious question in this case. The lower court, it must be remembered, sustained this motion as to the first search and seizure. On this appeal at least this ruling by the court must be accepted as correct, and we think it is sustained by controlling authority. Go-Bart Importing Co. v. United States, 282 U. S. 344, 51 S. Ct. 153, 75 L. Ed. 374; Taylor v. United States, 286 U. S. 1, 52 S. Ct. 466, 76 L. Ed. 951; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; United States v. Lefkowitz, 285 U. S. 452, 52 S. Ct. 420, 76 L. Ed. 877; Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409; Byars v. United States, 273 U. S. 28, 47 S. Ct. 248, 71 L. Ed. 520; Marron v. United States, 275 U. S. 192, 48 S. Ct. 74, 72 L. Ed. 231. In this motion and supporting affidavits, defendants had alleged ownership of the liquor seized, had alleged that they had a lease on the garage and chicken coop and an easement over the driveway. These documents were tantamount to a written confession of guilt.

It being established that the constitutional guaranties of the defendants had been invaded by this first search and seizure, they were, of course, warranted in asserting their constitutional rights by such means as would be effective. For the purpose of securing the rights guaranteed them by the Constitution, they presented this motion with the supporting affidavits. It is, however, argued that, under the well-established rules of evidence, the statements contained in the motion and affidavits were admissions against interest and hence admissible in evidence. Conceding, as we must, that the showing made by the defendants was essential to securing to them the protection of the Constitution, then a rule of evidence, and not the Constitution of the United States, would be the supreme law of the land. To so hold would render the constitutional guaranties sonorous but impotent phrases. If this were the law, searches and seizures of the most drastic and unreasonable character, even invading the privacy of the home, might be perpetrated in flagrant violation of the constitutional guaranties, and even though the property so seized were, on proper motion, returned to the owner and its use as evidence suppressed, yet the same results could be secured by introducing, as in the instant case, the motion papers containing the admissions with reference thereto, thereby effectually invading the privacy of the individual guaranteed by the Constitution. But, as said by the Supreme Court in Gouled v. United States, supra, "A rule of practice must not be allowed for any technical reason to prevail over a constitutional right."

While the Fourth Amendment guarantees protection against unreasonable searches and seizures, the Fifth Amendment guarantees protection against self-incrimination. At all stages of the trial defendants were entitled to the protection of both these guaranties. They protect all persons, including the accused, suspected, and guilty, as well as the innocent, and should be liberally construed in favor of the individual. Go-Bart Importing Co. v. United States, 282 U. S. 344, 51 S. Ct. 153, 75 L. Ed. 374; Byars v. United States, 273 U. S. 28, 47 S. Ct. 248, 71 L. Ed. 520; Gouled v. United States, 255 U. S. 298, 41 S. Ct. 261, 65 L. Ed. 647; Boyd v. United States, 116 U. S. 616, 6 S. Ct. 524, 29 L. Ed. 746; Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145, 51 A. L. R. 409.

If, in a case where the search and seizure

has been adjudged to be unreasonable and violative of the Fourth Amendment to the Constitution, the motion to suppress with the supporting affidavits, can be used by the government for the purpose of proving the guilt of the defendant, then, in order to avail himself of the guaranty afforded by the Fourth Amendment, he must waive the constitutional guaranty afforded him by the Fifth Amendment. If the government's contention be sustained, then the moment the defendants in this case made affidavits essential to the assertion of their rights under the Fourth Amendment, they became witnesses against themselves. To so hold would, for practical purposes, render unavailing the guaranties of both the Fourth and Fifth Amendments.

Counsel for the government cite as sustaining the ruling of the lower court, the case of United States v. Lindsly (D. C.) 7 F.(2d) 247, but it is observed that in that case there was no objection on behalf of the defendants to the offer of the evidence, and, further, the decision was reversed by the Circuit Court of Appeals, the latter opinion being reported in 12 F.(2d) 771. Vaught v. United States (C. C. A.) 7 F.(2d) 370, 371, is also cited, but the opinion in that case gives scant consideration to the question and makes no mention whatever of the constitutional questions involved. It does not appear that the question here considered was presented to the court, and the court disposes of the matter by simply saying: "The affidavit was properly admitted as an admission by Vaught."

The same court in a later case, Fabri v. United States, 24 F.(2d) 185, 186, in reversing an order denying a return of property seized from the defendant, among other things said: "The only pertinent allegations in the petition [for a return of the seized property] are that defendant was in the possession and entitled to the possession, in his home, of numerous identified containers, 'and the contents thereof, which is alleged in the information on file herein to contain whisky,' or 'wine,' or 'rum.' We doubt whether this is to be considered as an averment of the character of the contents of the containers, but, if a different view be taken, it is to be said *that such admission resulted wholly from the exigency of the unlawful search and seizure,* and that, therefore, the government cannot take advantage of it. In short, when we analyze the record, it is found that the government's entire case rests directly or indirectly upon disclosures incident to the unlawful search." (Italics supplied.)

In Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319, 24 A. L. R. 1426, the court considered a case in which there had been an unreasonable search and seizure, and in which, on application by the defendant, the property seized had been returned. While the property was in possession of the prosecuting officers, however photographs and copies of material papers were made. The lower court, while ordering a return of the originals, impounded the photographs and copies, and thereafter subpœnas were issued for the production of the originals. The parties, having refused to produce the original documents in court, were cited for contempt. In the course of the opinion by Mr. Justice Holmes, it is, among other things, said:

"The Government now, while in form repudiating and condemning the illegal seizure, seeks to maintain its right to avail itself of the knowledge obtained by that means which otherwise it would not have had.

"The proposition could not be presented more nakedly. It is that although of course its seizure was an outrage which the Government now regrets, it may study the papers before it returns them, copy them, and then may use the knowledge that it has gained to call upon the owners in a more regular form to produce them; that the protection of the Constitution covers the physical possession, but not any advantages that the Government can gain over the object of its pursuit by doing the forbidden act. Weeks v. United States, 232 U. S. 383, 58 L. Ed. 652, L. R. A. 1915B, 834, 34 S. Ct. 341, Ann. Cas. 1915C, 1177, to be sure, had established that laying the papers directly before the grand jury was unwarranted, but it is taken to mean only that two steps are required instead of one. In our opinion such is not the law. It reduces the Fourth Amendment to a form of words. 232 U. S. 393, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177. The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all."

The admissions secured from the defendants were clearly the result of the unlawful search and seizure, and under the doctrine of the Silverthorne Case were not admissible.

We conclude that the admission in evidence of this petition and supporting affidavits was violative of defendants' constitutional guaranties.

899

We have considered the other alleged errors, but are of the view that they are not substantial.

The judgment is therefore reversed, and the cause remanded, with directions to grant defendants a new trial.