**UNITED STATES of America,**
Plaintiff,

v.

**Dennis Harley CALLAHAN and Kenneth James Callahan, Defendants.**

No. 4–64–Cr–67, 68.

United States District Court
D. Minnesota,
Fourth Division.
April 14, 1964.

Miles W. Lord, U. S. Atty., and Sidney P. Abramson, Asst. U. S. Atty., Minneapolis, Minn., for the United States of America.

J. Derck Amerman, Prescott, & Amerman, New Brighton, Minn., for defendants.

### ORDER DENYING MOTION FOR THE SUPPRESSION OF EVIDENCE

DEVITT, Chief Judge.

The defendants are charged with violation of § 487, Title 18 U.S.C.A., for unlawful possession of dies and molds used in counterfeiting United States coinage. This expression is occasioned by a motion for the suppression of evidence obtained from the defendants' automobile on the ground that it was obtained as a result of an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution.

The essential facts are not in dispute and are as follows: During the early morning hours of Sunday, January 5, 1964, the Minneapolis Police Department received a phone call from an unknown informant that in a certain automobile parked in a downtown Minneapolis parking lot there were molds and other objects apparently used for the counterfeiting of U. S. coins. The informant advised the police that he had been prowling cars in the vicinity and had broken into the vehicle in question. The informer sought immunity from the police, but he was apparently promised nothing. Prior to this time the informer was unknown to the Minneapolis police, and admittedly bore no relationship or special badge of reliability as an informer.

Thereafter two police detectives met the informer and went to the lot where the vehicle in question was parked. The detectives checked the license plates on the vehicle (a 1963 Pontiac station wagon) and found that they had been issued to a different vehicle, leading to the conclusion that the car may have been stolen. The detectives called for assistance and at about 3:15 A.M. commenced a surveillance of the vehicle. Five police officers approached the vehicle. One of the detectives testified that with the aid of a flashlight he could see through the closed windows of the vehicle, and was able to observe white plaster molds for United States coins located on the floor behind the front seat. This detective testified that he could distinguish the imprint on the molds by this observation. The car door was unlocked. The detectives entered the vehicle and took one plaster mold.

These same five officers maintained a surveillance of the vehicle until they were relieved at 7:00 A.M. by three other police officers and two United States Secret Service Agents. At about 1:30 P.M. the defendants approached the vehicle and were apprehended while placing clothing into the back end. After the defendants were arrested a search of the vehicle was conducted, and numerous counterfeit coins, more than 100 pieces of plaster molds of various denominations, and various pieces of equipment usable as counterfeiting paraphernalia were seized.

No search warrant was obtained for the search of the vehicle by either the Minneapolis police officers or the federal agents.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, * * * ." It is the defendants' contention that this right was violated when the police officers, without a warrant and allegedly without probable cause, searched and seized from their automobile the evidence in question.

■ It is established that whether evidence obtained by state officers and sought to be used against a defendant in a federal prosecution was obtained by an unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers. Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). If these actions constitute an illegal search and seizure under the Fourth Amendment then the motion to suppress must be sustained.[1]

■■ The Fourth Amendment is in the nature of a guarantee of privacy and may be invoked by any citizen, whether guilty or innocent. Go-Bart Importing Co. v. United States, 282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374 (1931). However, it is clear that the Fourth Amendment does not forbid all searches and seizures but only such as are *unreasonable,* and "[t]he propriety of the seizure of property without a search warrant is dependent upon the facts and circumstances existing at and prior to the time of seizure and known to the seizing officers." Lawson v. United States, 254 F.2d 706, 708 (8th Cir. 1958).

■■ It is well established that an automobile comes within the purview of the Fourth Amendment and cannot be unreasonably searched.[2] However, unlike a dwelling house or other structure, Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958),[3] a search of an automobile without a warrant and not incident to a lawful arrest *may* be sustained if probable cause for the search exists. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925). See Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629, 74 A.L.R. 1407 (1931).

This distinction was recognized in a recent Supreme Court decision, Justice Black delivering the unanimous opinion of the Court:

Common sense dictates, of course, that questions involving searches of motor cars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motor car. See Carroll v. United States, supra, 267 U.S., at 153, 45 S.Ct. at 285, 69 L.Ed. 543. But even in the case of motor cars, the test still is, was the search unreasonable. Therefore we must inquire whether the facts of this case are such as to fall within any

1. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426 (1920). "Fruit of the poisonous tree doctrine"—illegal search and seizure taints subsequent arrest and seizure incident thereto unless the information constituting probable cause for the arrest and seizure was derived from independent source. See Mardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); United States v. Paroutian, 299 F.2d 486, 488–489 (2d Cir. 1962).

2. Lanza v. State of New York, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962), citing at 370 U.S. 143 n. 12, 82 S.Ct. 1218, Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293, 52 A.L.R. 1381 (1927); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925). See Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

3. Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961); McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Agnello v. United States, 269 U.S. 20, 33, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409 (1925). Even though there may be probable cause to search a dwelling, unless there is independent probable cause to arrest, the Supreme Court restricts searches without a warrant to those instances where, "[T]here are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with." Johnson v. United States, 333 U.S. 10, 14–15, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).

of the exceptions to the constitutional rule that a search warrant must be had before a search may be made. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

The defendants would urge that the *Carroll* case should be limited to those cases where the vehicle is in transit on a public road or highway, and that it should not be applied to a parked vehicle where there is no immediate danger of removal of the contraband. This argument has been rejected by good authority. United States v. Haley, 321 F.2d 956, 958 (6th Cir. 1963); Armada v. United States, 319 F.2d 793 (5th Cir. 1963); United States v. Walker, 307 F.2d 250 (4th Cir. 1962). In the *Walker* case the Court stated at p. 252:

> However, this argument ignores the basic reason for the *Carroll* doctrine— that a vehicle by its very nature can be quickly moved out of the locality or jurisdiction in which the warrant might be sought and law enforcement thereby frustrated. This very practical consideration is present whether the vehicle is in transit on the open road or parked.

The primary question that is raised and argued in the briefs is whether there was probable cause for the search and seizure. The defendants urge that the word of the prowler-turned-informer is not sufficiently reliable information to create probable cause for a search and seizure without a search warrant,[4] and hence argue that the facts of this case do not fall within the *Carroll* exception to the constitutional rule that a search warrant must be obtained before a search may be made. However, this contention seems to ignore the fact that even though the information received from the informer may not have created probable cause for an exploratory search, or perhaps even for a search warrant, it certainly created probable cause for the subsequent investigation which the officers undertook. In the words of the Supreme Court in Scher v. United States, 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151 (1938):

> In the circumstances the source of the information which caused him to be observed was unimportant to petitioner's defense. The legality of the officers' action does not depend upon the credibility of something told but upon what they saw and heard—what took place in their presence.

After receiving this tip the officers first drove past the parked vehicle, apparently without stopping, and obtained the license number. Upon checking this information the officers learned that the license plates on the vehicle had been issued to a different vehicle. The officers apparently concluded that they would need additional assistance and immediately requested it from headquarters via their car radio. It is significant to note that this action was taken before any officer approached the vehicle and had an opportunity to see the counterfeit molds through the window. From the time the officers learned the license plates were not issued to the vehicle there was a known violation of Minnesota law,[5] and the officers had probable cause to think

---

4. It is true that a hearsay statement by a *reliable* informant may constitute probable cause but it seems that the informant's statement should be reasonably corroborated by other matters within the officer's knowledge. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). There must apparently be a "substantial basis for crediting the hearsay." Johns v. United States, 362 U.S. 257, 272, 80 S.Ct. 725, 736, 4 L.Ed.2d 697, 78 A.L.R.2d 233 (1960). The standard of probable cause to support a search without a warrant is no less stringent than the standard of probable cause required to support the issuance of a search warrant. United States v. Peisner, 311 F.2d 94, 101 (4th Cir. 1962), citing Henry v. United States, 361 U.S. 98, 104, 80 S.Ct. 168, 172, 4 L.Ed.2d 134 (1959).

5. Under Minnesota law it is a misdemeanor to display license plates on cars other than the one for which issued, 12 M.S.A. § 168.36(2), or which have been fraudulently obtained or stolen. 12 M.S.A. § 168.10(3).

that the car had been stolen.[6] It would seem that they would be justified in searching the car on this basis when they first came on the scene. Cf. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881 (1964) (dictum). However, this position has not been stringently urged by the government, and in any event need not be relied on to support the action taken by the police officers.

After the additional assistance arrived the officers approached the vehicle and looked into it with the aid of their flashlights. From this observation at least one of the officers testified that he could distinguish the imprint of a counterfeit coin, specifically a silver dollar, on the blocks lying uncovered on the back floor.[7] It is this action which the defendants urge constituted an unreasonable search in violation of their right of privacy under the Fourth Amendment.

To support this contention they rely primarily on McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948). In this case police officers suspected McDonald was operating a lottery and had kept him under surveillance for two months. Without a warrant for search or arrest, the officers forced their way into a rooming house where he had rented a room, and, after looking through the transom and observing the petitioners engaged in operating a lottery, demanded entrance to the room and arrested both petitioners and seized machines, papers and money which were in plain view. The Supreme Court reversed the convictions based on the evidence seized at the time of arrest, and held that a search without a warrant was not justified unless there were "exceptional circumstances" and the exigencies of the situation make that course imperative.

The defendants here analogize the observation of the counterfeit items with the aid of the flashlight to the looking through the transom in the McDonald case, and argue that since the latter was not sanctioned the former must be condemned. However, this analogy is not accurate. The Supreme Court in McDonald did not specifically condemn the "spying" actions of the police officers, but condemned the search without stating wherein it was wrong. In clarifying the majority opinion, Justice Jackson in a concurring opinion, with whom Justice Frankfurter joined, specifically approved the "spying" action but condemned the forced entry into the house and urged that this was the reason the search was bad.[8] He states at 335 U.S. 458, 69 S. Ct. at 194:

> Had the police been admitted as guests of another tenant or had the approaches been thrown open by an obliging landlady or doorman, they would have been legally in the hallways. Like any other stranger, they could then spy or eavesdrop on others without being trespassers. If they peeped through the keyhole or climbed on a chair or on one another's shoulders to look through the transom, I should see no grounds on which the defendant could complain. If in this

---

6. Under Minnesota law it is a felony to steal an automobile, 12 M.S.A. § 168.49, 40 M.S.A. § 622.06 (punishable as second degree grand larceny).

7. Partial testimony of Detective Russell J. Dee was as follows:
 Q What did you do then?
 A Well I took my flashlight and as the other officers were doing, and looking inside the car, and right behind the rear seat I could see in a pile that had been—they were partially covered and several of them in plain view. They were white plastic (sic) blocks and the blocks had imprints of, I believe, at that time, coins—silver dollars.

Subsequent testimony further developed that he could see clearly through the window and recognize the imprints of some of the counterfeit molds.

8. In the dissent, written by Justice Burton, with whom Chief Justice Vinson and Justice Reed joined, it was specifically concluded that there was in fact no search. 335 U.S. at 461, 69 S.Ct. 191. By addition it seems that a majority of the Court—the three dissenting justices and two concurring justices—concluded that the "Spying" action did not constitute a search prohibited by the Fourth Amendment.

manner they, or any private citizen, saw a crime in the course of commission, an arrest would be permissible.

This reasoning has not been rejected, and the majority holding was subsequently construed by the Supreme Court to prohibit physical entry to a premises by means of force. See On Lee v. United States, 343 U.S. 747, 752–753, 72 S.Ct. 967, 96 L.Ed. 1270 (1952).

In any event, whatever the controlling reasoning in the *McDonald* case, the questions there involved the search of a dwelling house and not an automobile or other movable vehicle, and it need not be treated as identical to the question presented here. See Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

■■■■ In the instant case the vehicle was parked in the open in a public parking lot, adjacent to an alley. By approaching the vehicle and observing the interior of the car with the aid of flashlights there was no *search* proscribed by the Fourth Amendment. To constitute a search under the Fourth Amendment "more than an ordinary use of the senses is required * * *, with the result, in most cases, of a trespass either to the person or to property. It cannot be said that there has been a search when the items are in plain view of the officer." Matthews, Reasonable Searches, 39 N.D.L.Rev. 155 (1963).[9] It was unnecessary to search the vehicle in that several of the counterfeiting items were lying

clearly exposed on the back floor. These items would have been visible to view in the daylight to anyone walking past and looking in the window. It does not constitute a search to observe that which occurs openly in a public place and which is exposed to visual observation,[10] and this rule includes observations whether made in daylight or in artificial light.[11]

Even if these actions could be deemed a technical civil trespass, they would in no sense comprise an unlawful search forbidden by the Fourth Amendment. Hester v. United States, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924); Giacona v. United States, 257 F.2d 450, 456 (5th Cir. 1958); United States v. Williams, 227 F.2d 149, 151 (4th Cir. 1955); Safarik v. United States, 62 F.2d 892 (8th Cir. 1933). The reasonableness of these actions cannot be seriously contended. In effect the officers were merely inspecting in an effort to verify the information which they had received from the informer.

■■■■ We cannot find that the police actions constituted a search. Hence there is no need to base the validity of the seizure of the single counterfeit block prior to the arrest upon the question of whether there was sufficient pre-existing probable cause for the action. Upon the observation of the counterfeiting items through the window the officers had the legal right, and indeed the duty, to seize any or all of the contra-

9. As defined in Monroe v. Pape, 221 F.Supp. 635, 642 (N.D.Ill.1963):
 " ' * * * a "search" implies the authoritative invasion and quest and generally an examination of or into the person, the property, the premises or the personal effects of a person for the purpose of locating a person or thing or fact material to an issue at law.' " (Citing authority at 221 F.Supp. 642 n. 5.)

10. Trujillo v. United States, 294 F.2d 583 (10th Cir. 1961); Ellison v. United States, 93 U.S.App.D.C. 1, 206 F.2d 476 (1953); United States v. Hayden, 140 F.Supp. 429, 435 (D.Md.1956) (dictum). See Rios v. United States, 364 U.S. 253,

262, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).

11. United States v. Lee, 274 U.S. 559, 563, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); United States v. Williams, 314 F.2d 795, 798 (6th Cir. 1963); Petteway v. United States, 261 F.2d 53 (4th Cir. 1958); Haerr v. United States, 240 F.2d 533, 535 (5th Cir. 1957); Safarik v. United States, 62 F.2d 892, 895 (8th Cir. 1933); Smith v. United States, 2 F.2d 715 (4th Cir. 1924); Boyd v. United States, 286 F. 930 (4th Cir. 1923); United States v. Strickland, 62 F.Supp. 468, 471 (W.D.S.C. 1945).

band property involved.[12] The subsequent arrest and seizure incident thereto were based upon legal probable cause, and there is no basis for suppressing the evidence as stemming from an illegal search and seizure under the Fourth Amendment.

 The defendants also urge that the search and seizure are invalid as the officers had sufficient opportunity (nearly ten hours) to secure a search warrant, and that the exigencies of the situation did not excuse this failure. Drayton v. United States, 205 F.2d 35 (5th Cir. 1953); Baxter v. United States, 188 F.2d 119 (6th Cir. 1951). It is true that the law formerly required a search warrant—even where the search was incident to a lawful arrest—unless the absence of a warrant could be excused under the circumstances of the case. Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948). However, *Trupiano* has been modified to the extent that it requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest. United States v. Rabinowitz, 339 U.S. 56, 65–66, 70 S.Ct. 430, 94 L.Ed. 653 (1950). Thus even though there was ample opportunity to secure a warrant in the instant case, and though this may have been a preferable course of action, the initial seizure and the subsequent seizure incident to the lawful arrest [13] are not within the unreasonable search and seizure prohibition of the Fourth Amendment.

The motion to suppress the evidence is denied.

---

12. United States v. Williams, 314 F.2d 795, 799 (6th Cir. 1963). See Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).

Indeed since the counterfeiting paraphernalia is contraband, 49 U.S.C.A. § 781(b) (3), the vehicle used for its transportation is subject to be seized and forfeited. 49 U.S.C.A. § 782.

13. Assuming the legality of the initial seizure there is no contention that the subsequent arrest was invalid. The validity of an arrest is determined by state law in the absence of an applicable federal statute, United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). Under Minnesota law an arrest is permitted without a warrant where a felony has been committed and there is reasonable cause for believing the person arrested to have committed it. 41 M.S.A. § 629.34.